The **NORTH AMERICAN COAL COR-PORATION, Plaintiff-Appellee,**

v.

**LOCAL UNION 2262, UNITED MINE WORKERS OF AMERICA, et al., Defendants-Appellants.**

No. 73-1629.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 27, 1973.

Decided May 10, 1974.

Daniel B. Edelman, Washington, D. C., for defendants-appellants; Joseph A. Yablonski, Lewis D. Sargentich, Washington, D. C., on brief.

Jerry A. Fullmer, Cleveland, Ohio, and Edward H. Laylin, Columbus, Ohio, for plaintiff-appellee.

Before EDWARDS, Circuit Judge, McALLISTER, Senior Circuit Judge, and JOINER,* District Judge.

* Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, Southern Division, sitting by designation.

EDWARDS, Circuit Judge.

In this appeal Local 2262 of the United Mine Workers of America, seeks relief from a preliminary injunction which enjoined the local union and its officers from continuing, encouraging, and picketing in support of a work stoppage at North American's Powhatan #3 Mine in Jacobsburg, Ohio. This is also an appeal from judgments finding the eight officers and the local union itself in criminal contempt of the court's injunction under 18 U.S.C. § 401(3) (1970) and assessing penalties therefor.

This litigation originated in a work stoppage at Powhatan #3 over the case of a miner, who after missing two days of work, was not allowed to return without a doctor's slip. The District Judge originally denied a temporary restraining order but orally required that the company resume negotiations on the grievance and that the union order return to work. Negotiations were resumed and the men did return to work for two shifts, but again left their jobs.

At a hearing on April 12 no formal proofs were taken from the plaintiff, but the parties agreed that there was a strike, and that the contract between the company and the union contained a compulsory arbitration clause. The District Judge thereupon declared that the burden of proof that an injunction should not issue was upon the UMW. He issued the temporary injunction, however, after refusing to take proofs pertaining to the equities between the parties and without any proofs as to the issue of irreparable damage.

After the issuance of the preliminary injunction, the union called a meeting where testimony indicates that the union officers urged resumption of work, but it is clear that in fact no work was resumed. Thereafter on two successive dates, after the officers and the union had been cited for contempt, the judge entered orders finding first, two of the officers and then six more of the local union officers in criminal contempt. The District Judge sentenced them to 30 days in jail, but subsequently suspended the sentences.

It is the appellants' claim as to these sentences that there was no proof at the hearings that any of the eight officers had authorized or encouraged the work stoppage, and on the contrary, that the undisputed proof was that each of the eight officers had urged the men to go back to work. The only finding of fact on this issue which the District Judge appears to have made (other than the ultimate findings of contempt) was that the officers had made "valiant efforts" to get the men back to work.

The District Judge's reasoning at the April 13, 1973, hearing pertaining to the individual contempt findings and sentences as to appellants Phillips and Smith is fully set forth below:

"THE COURT: On April 12, 1973, this Court issued an order upon specified named individual Defendants enjoining them collectively and severally from doing specific acts. A Union is a voluntary organization of members who seek a common goal. The officers of that Union must accept responsibility for the acts thereof. This Court is not willing to allow its orders to be defied.

In this particular matter and at this particular time, the Court represents the United States of America. No one is going to defy this Court's order.

Accordingly, the Court finds that Russell Phillips and Oscar Smith as officers of Local Union 2262 are guilty of contempt of Court. The Court will remand such Defendants to the custody of the United States Marshal for a period of 30 days for such contempt. The execution of this sentence will be delayed until 1:30 P.M. on Monday, April 16 at which time the Court will hear as to the contempt of the other named Defendants.

The Court will take into consideration at that time the status of the mine in question and whether or not it is operating.

The Court will reserve the question as to a monetary fine against Local 2262 and hold this matter for a further hearing. Pending such hearing, however, the Plaintiffs are hereby ordered to hold all checkoff funds in escrow pending a further determination and instruction by this Court.

This is a matter that should not have reached this point. On two separate occasions this Court has gone beyond its legal obligation in an effort to compromise the differences between the parties. On Tuesday, April 10, the Court made a specific effort for the parties to adhere to the agreement that is binding upon them. That effort was unsuccessful.

On Thursday, April 12, this Court issued an order requiring the parties to proceed in accordance with the contract between them and that order was disobeyed.

No person should mistake forebearance for weakness. No person, no group, no Company will defy the United States District Court.

Mr. Osterman, you may adjourn the Court."

The District Judge's reasoning at the April 16 hearing concerning the balance of the local union officers is set forth fully below:

"THE COURT: The Court is aware today as it was aware on Friday that there is a difference between the individuals who are here before this Court and the large number of members of this Local Union, a difference in the sense that they as officers are identifiable whereas the bulk of the Union is not identifiable. This is a very difficult problem. It has been a difficult problem for a number of years. We have reached a point in our relationship between Management and Unions that we place a burden on both. We have passed the point where Management can hire and fire at will with or without just cause, and we have also passed the point where a Union may strike as it will with or without just cause.

For reasons that escape this Court, in this particular situation despite numerous efforts to explain in as simple terms as possible, this Union and these Defendants simply refused to understand what the Court was saying, and I will say it once more. There is no right to strike under this agreement so long as the contract is in effect.

You have a right to process grievances and this Court stands ready to assist in processing grievances. No one is going to make a mockery out of that process by delay, by refusal, or by clouding the issue, and I impose upon Management as I imposed upon them last week the obligation to meet with you promptly, to deal with you fairly, and to process this grievance in accordance with the contract.

If you cannot agree, the matter goes to an impartial Umpire.

If you can't agree upon an Umpire and if both sides so require, the Court will appoint one. The Court is willing to assist so that there be a prompt disposition of a grievance.

Now, next week, any time there is a grievance, this is your Court. These are your laws and they are intended to be fair laws. I repeat again, anytime, anyplace, this Court is ready to assist in the prompt settlement of industrial grievances, but when this Court makes an order, it will be obeyed, and this Court made an order and these Defendants violated that order.

Accordingly, the Court finds that Fred[e]rick Clark, Nick Corise, Paul Mackinaw, William Lawrence, Jacob Schramm, Frank Del Vecc[h]io have each been guilty of contempt of Court and the Court does, therefore, impose a sentence upon each of them of 30 days incarceration.

The Court is aware of the fact that as of this time the mine is back in operation. The contempt of the Court's

order no longer issues and, therefore, the sentences heretofore imposed as well as those imposed upon Russell Phillips and Oscar Smith on Friday, April 13, are hereby suspended.

There is likewise a question of whether or not the Local Union itself as an entity has been guilty of contempt of Court and whether or not this Plaintiff is entitled to damages. That matter will come before this Court in Columbus, Ohio at 3:00 P.M. Wednesday, April 18, and the sole issue at that time will be whether or not the Union itself should be held in either civil or criminal contempt of Court."

At still another hearing upon April 18, 1973, the District Judge took testimony upon plaintiff-appellee's claims of losses in tonnage and profits due to the strike. The District Judge concluded:

"THE COURT: The Court is going to take this matter under advis-[e]ment. Let me make just one or two observations: This has been an unpleasant task presented to this Court over the past week and a half. I am well aware of the fact that none of the participants have gained over this incident. This Company has lost money, substantial sums of money. Individuals of this Union have been held in contempt. Men have lost wages. This Union is facing consideration at this time of a fine, and I would point out further that all of this was totally unnecessary. In this room just over a week ago the Court made its position known and urged as strongly as it could that the parties seek a peaceful settlement of this dispute.

Unpleasant or not, however, an order of this Court was issued and despite the valiant efforts and I recognize that the best efforts were made by individuals, nevertheless, this Union did stay out on strike and did violate the express terms of this Court's order.

All of these matters will be taken into consideration and the Court will issue an order promptly.

Mr. Walters, you may adjourn the Court."

The order entered thereafter provided:

"Disobedience of this Court's order, however, is another matter. There has been a willful and deliberate disregard thereof. To accept the defense that the officers of the Union were helpless to prevent the occurrence, would serve only to reward irresponsibility and encourage disrespect. See (Easor [Eazor] Express, Inc. v. International Brotherhood of Teamsters, 41 U.S.L.W. 2549 (W.D.Pa. April 11, 1973) No person, however provoked; no organization, however powerful, may with impunity flout the lawful order of the United States District Court.

Accordingly, the Court finds that defendant, Local Union 2262, United Mine Workers of America, from 4:00 P.M., Thursday, April 12, 1973 until 12:01 A.M., Monday, April 16, 1973, acted in contempt of this Court's order. During that period of time, four shifts of miners, members of the bargaining unit of Defendant, failed to report for work as ordered. The Court does, therefore, assess a fine against said Defendant in the sum of two hundred fifty dollars ($250.00) for each of such shifts, or a total of One Thousand Dollars ($1,000.00.)"

The three questions posed by this appeal, as we see them, are:

1) Is the temporary injunction issued by the District Judge valid?

2) Are the contempt sentences applicable to the individual officers on the basis of their vicarious liability for the strike valid sentences?

3) Is the contempt sentence against Local 2262 valid?

As to the first question pertaining to the temporary injunction, the District Judge erred both in shifting the burden of proof to the defendants and in failing

and refusing to take testimony and make findings on the equities between the parties and on irreparable damage. *See* Boys Markets v. Retail Clerks Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L. Ed.2d 199 (1970), as recently interpreted by this court in Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union, 471 F.2d 872 (6th Cir. 1972), cert. denied, 411 U.S. 967, 93 S.Ct. 2149, 36 L.Ed.2d 687 (1973).

In *Boys Markets* the Supreme Court held:

"Our holding in the present case is a narrow one. We do not undermine the vitality of the Norris-LaGuardia Act. We deal only with the situation in which a collective-bargaining contract contains a mandatory grievance adjustment or arbitration procedure. Nor does it follow from what we have said that injunctive relief is appropriate as a matter of course in every case of a strike over an arbitrable grievance. The dissenting opinion in *Sinclair* (Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L. Ed.2d 440) suggested the following principles for the guidance of the district courts in determining whether to grant injunctive relief—principles that we now adopt:

'A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. *Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance.'* 370 U.S., at 228 (Emphasis in original.)" Boys Markets v. Retail Clerks Union, 398 U.S. 235, 253–254, 90 S.Ct. 1583, 1594, 26 L.Ed.2d 199 (1970). (Italics added.)

 The District Judge properly construed *Boys Markets* as holding that where a collective bargaining agreement contained a mandatory arbitration clause, injunctive relief may be appropriate regardless of the provisions of the Norris-LaGuardia Act, 29 U.S.C. §§ 101–115 (1970). *See* Gateway Coal Co. v. United Mine Workers of America, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). However, he ignored the equitable considerations, including proof of irreparable injury, which must underlie all injunctive relief as set forth in the *underlined* sentence in the *Boys Markets* quotation above.

This court recently emphasized this same point in a case where it was the employer who was the target of the injunction. The language employed is exactly in point here:

"The fatal defects in the decision of the District Court were: (1) its failure to weigh the equities between the parties and to determine whether the employer would suffer more from the granting of the injunction than the Union from its denial, as required by Boys Market, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 254, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); and (2) the absence of a showing of irreparable harm to employees as mandated by *Boys Markets*." Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union, *supra* at 875.

■ Although what we have said above requires vacation of the temporary injunction, we also comment that the burden of proof [1] remains upon the party seeking the extraordinary relief involved in a court's use of the injunctive power until all necessary elements to the issuance of an injunction have been established. As Justice Marshall stated:

> "The burden was on the employers to show that they were entitled to a preliminary injunction, not on the Union to show that they were not." Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). (Decided March 4, 1974).

■ Of course, even if the District Court's injunction was invalid for the reasons we have outlined, it is settled law that it still must be obeyed until and unless it is overturned on appeal. United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S. Ct. 492, 55 L.Ed. 797 (1911). Hence, we pass on to consideration of the contempt proceedings.

■ We must likewise vacate the contempt sentences imposed upon the eight officers of Local 2262. Their defense was that the strike was a "wildcat" strike and that it was never authorized by the union or by any of its officers. There is not a line of testimony that any one of those found guilty of criminal contempt ever did anything to initiate, encourage or continue the strike. The sworn testimony on the contrary was that they repeatedly sought to terminate it by conveying the orders of the court and by themselves ordering the miners back to work. The District Judge apparently had no doubts about the good faith of these efforts. This record contains no findings of subterfuge applicable to the alleged contemnors and, as quoted above, the District Judge on the contrary praised them for their "valiant efforts."

We are, of course, aware that dissimulation is as possible in a labor-management controversy as in any other. See Judge Prettyman's analysis in International Union v. United States, 85 U.S. App.D.C. 149, 177 F.2d 29, cert. denied, 338 U.S. 871, 70 S.Ct. 140, 94 L.Ed. 535 (1949). But such a charge must be made and heard on sworn testimony, followed by findings of fact by the District Judge. Here dissimulation on the part of the local union officers was not even suggested, much less testified to or made the subject of a judicial finding. And contrary to the expressed view of the District Judge, there is simply no such thing as vicarious liability of an individual for criminal contempt. Aside from regulatory offenses, intent is an element of every crime. Morissette v. United States, 342 U.S. 246, 250, 72 S. Ct. 240, 96 L.Ed. 288 (1952).

The fundamental error of law recited above obviates the necessity of our ruling upon appellants' claims of entitlement to a new trial on this issue because of deprivation of the normal attributes and protections of a criminal trial.

Procedural errors, however, do require vacation of the criminal contempt judgment and sentence of $1,000 fine as to the local union and the remand of that case for retrial.

■ Review of this record convinces us that the District Judge conceived of these criminal contempt proceedings as being in the nature of summary proceedings. Summary proceedings are, however, limited to contempts committed in the presence of the court where the court has witnessed and heard all of the relevant facts. Thus Rule 42(a) and (b) of the Federal Rules of Criminal Procedure provides:

> "(a) *Summary Disposition.* A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constitut-

---

1. In this § 391 action, agency proofs are governed by 29 U.S.C. § 185(e) (1970).

ing the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

(b) *Disposition Upon Notice and Hearing.* A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment." Fed.R.Crim.P. 42(a) & (b).

In In re Oliver the Supreme Court of the United States held:

"Except for a narrowly limited category of contempts, due process of law as explained in the *Cooke* case (Cooke v. United States, 267 U.S. 517, 45 S. Ct. 390, 69 L.Ed. 767) requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testi-fy and call other witnesses in his behalf, either by way of defense or explanation." In re Oliver, 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682 (1948).

In this regard the Eighth Circuit has held:

"Rule 42(b) does not relieve the prosecution of its burden to establish guilt beyond a reasonable doubt. The order to show cause is merely a method of serving notice of the alleged violation of an order. United States v. United Mine Workers, 330 U.S. 258, 296–297, 67 S.Ct. 677, 91 L.Ed. 884 (1947). The alleged contemnor is at all times clothed with the presumption of innocence and the Government has the continuing burden of proving his guilt. Yates v. United States, 316 F. 2d 718 (10th Cir. 1963); James v. United States, 275 F.2d 332, 335 (8th Cir.), cert. denied, 362 U.S. 989, 80 S. Ct. 1077, 4 L.Ed.2d 1022 (1960); Nilva v. United States, 227 F.2d 74, 80 (8th Cir. 1955), *aff'd*, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957)." In re Van Meter, 413 F.2d 536, 538 (8th Cir. 1969).

It has been clear to Congress for many years that imposition upon unions of vicarious liability for the unauthorized acts of individuals could easily mean the elimination of labor unions as a social institution in America. The clearest expression of Congressional concern is, of course, in the Norris-La-Guardia Act and, specifically, in Section 6 thereof.[2]

 Irresponsible or violent acts by individual workers (or by agents provocateur) if automatically attributable to the union on the scene could, of course, serve to destroy it. But such vicarious liability is repugnant to due process of law. And this circuit has repeatedly recognized that unions may only be held

---

**2.** "No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof." Norris-La-Guardia Act, 29 U.S.C. § 106 (1970).

responsible for the authorized or ratified actions of its officers and agents. *See* Blue Diamond Coal Co. v. United Mine Workers of America, 436 F.2d 551 (6th Cir. 1970), cert. denied, 402 U.S. 930, 91 S.Ct. 1525, 28 L.Ed.2d 863 (1971); Lewis v. Benedict Coal Corp., 259 F.2d 346 (6th Cir. 1958), aff'd by an equally divided Court, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960); Garmeada Coal Co. v. International Union, United Mine Workers of America, 230 F.2d 945 (6th Cir. 1956).[3]

In each of these cases this court recognized that where a union did not call, authorize, or encourage a strike, and, on the contrary, employed its authority to oppose it, no liability for an unauthorized or wildcat strike could be attributed to the union.

In the *Blue Diamond* case this court held:

"Nothing herein is intended to hold that the bargaining contract should be read as imposing liability upon UMW for spontaneous or wildcat strikes in which it had no part by way of causing or prolonging such strikes. The District Judge told the jury:

'This suit is against the United Mine Workers of America. The local union is not a party to the contract, nor is it being sued in this action. Defendant United Mine Workers of America would not be liable for the action of the officers or individual members of the local union unless it is shown the United Mine Workers of America authorized, participated in, or ratified the acts of the local union or individual members after express knowledge of such acts, which are claimed to be violations of the contract.'" Blue Diamond Coal Co. v. United Mine Workers of America, *supra* at 556.

Appellants also seek reversal claiming error in the fact that jury trial was neither tendered nor waived in the District Court. In this regard appellants rely on Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), where the Supreme Court held that a jury trial is a constitutional right in criminal contempt charges involving other than petty offenses. We do not reach or pass on this issue, however, since the record clearly demonstrates that it was not presented below.[4]

■ While we are unable to find any evidence to support a guilty finding on the contempt charge pertaining to the eight individual officers, and hence we believe the charges as to them must be dismissed, the situation is somewhat different as to the local union. Clearly there was a strike which did continue after issuance of the injunction. The strike was the subject of discussion at local union meetings. There was effective support for the strike voiced at one such meeting. Whether such actions and sentiments can properly be attributed to the local union so as to prove guilt beyond reasonable doubt should be the subject of testimony and findings on remand of the local union contempt charge.

The judgments appealed from are vacated. The application for preliminary injunction is remanded to the District Court for rehearing upon the standards set forth above, unless in the meantime the issues have become moot. The judgments of conviction as to the eight

---

3. The District Judge cited and appears to have relied solely upon Eazor Express, Inc. v. International Brotherhood of Teamsters, 357 F.Supp. 158 (W.D.Pa.1973). Not only is the fact situation in *Eazor* markedly different from the facts of the instant case but the statements of law in this District Court opinion are in marked contrast to those of the Sixth Circuit cited above. We decline to follow *Eazor*.

4. On rehearing of criminal contempt proceedings concerning Local Union 2262, if a jury trial is demanded, the court should note the following authority as arguably applicable to the issue: 18 U.S.C. § 3692; Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); United States v. R. L. Polk & Co., 438 F.2d 377 (6th Cir. 1971).

local union officers are vacated and the case is remanded for dismissal of the contempt proceedings as to them. The judgment of conviction and sentence as to the local union are vacated and the contempt charge as to it is remanded for rehearing on the standards set forth above.