**ANHEUSER–BUSCH, INC.,**
**Plaintiff-Appellee,**

v.

**TEAMSTERS LOCAL NO. 633, NATIONAL CONFERENCE OF BREWERY AND SOFT DRINK WORKERS, et al., Defendants-Appellants.**

**No. 74–1291.**

United States Court of Appeals,
First Circuit.

Argued Nov. 5, 1974.

Decided Feb. 19, 1975.

I. Philip Sipser, New York City, with whom Sipser, Weinstock, Harper & Dorin, New York City, and Nixon, Christy & Tessier, Manchester, N. H., were on briefs, for appellants.

John J. Delaney, Jr., Boston, Mass., with whom William T. Sherry, Jr., Nutter, McClennen & Fish, Boston, Mass., William L. Phinney, Sheehan, Phinney, Bass & Green, Manchester, N. H., Charles P. O'Connor, and Morgan, Lewis & Bockius, Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, and ALDRICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This tempest has been brewed in a very small teapot. The dispute which precipitated the filing in this court of more than 80 pages of briefs and an extensive appendix began on July 30, 1974, when appellee Anheuser-Busch posted a notice prohibiting employees at its Merrimack, New Hampshire brewery from wearing tank-top shirts on the job. Tank-tops are sleeveless shirts which leave exposed the shoulders, arms and underarms of the wearer. Beginning on July 31, when three employees were sent home after refusing to doff their tank-tops for other shirts, the emotional temperature rose, with over a dozen more employees, including shop stewards, being sent home a few days later. The issue peaked by August 14, when thirteen of the eighteen employees in the Brewing Department wore tank-tops, refused to put on other shirts, and went home. Approximately thirty employees in the Maintenance Department wore tank-tops on August 15. On August 16 no maintenance employees reported for work and production at the brewery was halted.

On August 14 appellee filed a complaint seeking injunctive relief and damages [1] for what it alleged were violations of the collective bargaining agreement then in force. Labor Management Rela-

---

1. Defendants, herein referred to as appellants, were Teamsters Local No. 633, the National Conference of Brewery and Soft Drink Workers, and three union officers.

tions Act § 301(a), 29 U.S.C. § 185(a). After an August 16 hearing, the district court enjoined appellants from encouraging or participating in any concerted interference with brewery operations. By the specific terms of the injunction, employees were permitted to wear tank-tops only if working in areas of the plant where they were not subject to view by those members of the public or special groups touring the brewery.[2] Although the hearing was directed at the question of whether a temporary restraining order should issue, when it became clear that neither party intended to introduce additional evidence, the district court ruled that the order issued "was and is a preliminary injunction".

There are several difficult issues, raised by the parties in their briefs, which might require discussion and decision if this were a different case. The district court held that an injunction could be entered against the unions despite the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq., because of the Supreme Court's decision in Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). It is true that strikes and work stoppages are proscribed by the collective bargaining agreement between the parties, but that does not settle the question of the applicability of the Boys Markets doctrine, for the plant's shutdown might be viewed as attributable to the employer's choice of disciplinary methods rather than to the employees' failure to conform to the dress code. Other issues raised that need not be addressed here include the possible application of the requirements of the Norris-LaGuardia Act in a case where the Boys Markets exception is available and the suggestion that the employees' actions here were individual, not concerted.

This case may be resolved by reference to the ordinary principles governing equitable relief—principles which, the Boys Markets Court made clear, are to be applied where a labor injunction is sought:

" . . . the District Court must . . . . consider whether issuance of an injunction would be warranted under ordinary principles of equity— whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance." 398 U.S. at 254, 90 S.Ct. at 1594, quoting Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 228, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962) (Brennan, J., dissenting).

The district court's findings on the question of injury were brief: "I take judicial notice of the fact that the general public's desire for beer, while a year-round phenomenon, is more acute in the summer. I find, therefore, that continuance of this dispute will cause irreparable injury to the plaintiff and that an injunction is warranted under ordinary principles of equity. Although no strike has been called or threatened, the plant has been shut down just as effectively as if all of the employees were on strike and picketing the plant."

Even though the decision to grant or deny preliminary injunctive relief is one within the discretion of the district court, 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948 (1973), we conclude that the limited incursion upon the Norris-LaGuardia Act which was authorized by Boys Markets is insufficient to support the injunction issued below. Although the district court's findings on injury make reference to the fact that the plant was effectively shut down, an employer cannot be permitted to qualify for injunctive relief simply by responding to minor employee infractions in a way that brings serious and irreparable damage upon himself by causing a shutdown. That is what happened here. As the district court noted, "the real controversy is whether the employees shall be allowed

. Appellee objects to tank-tops on the ground that an unsightly appearance is presented by

employees to the many persons touring the brewery.

**1100**

to wear tank-top shirts pending submission of the agreement to arbitration."

Viewed from this perspective, the appellee's expected injury cannot be said to be either irreparable or one which outweighs the loss which the union was likely to suffer through the issuance of an injunction. Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18, 471 F.2d 872 (6th Cir. 1972), cert. denied, 411 U.S. 967, 93 S.Ct. 2149, 36 L.Ed.2d 687 (1973), is persuasive authority. In that case, a district court enjoined an employer, pending arbitration, from utilizing certain electronic editing equipment unless it was operated by employees represented by the plaintiff union. The court of appeals reversed. The lower court had not weighed the equities between the parties, and the employees' probable loss of overtime pending arbitration was found not to qualify as irreparable injury. Having some employees wear tank-tops, even during the summer when there are likely to be more than the usual number of persons touring the plant, cannot be considered the type of injury properly providing a basis for injunctive relief.

Our holding here should not be taken as one that an employer will never be successful in demonstrating that he will be seriously or irreparably harmed if prevented from effectively enforcing a work rule pending arbitration. Refusal by employees to comply with a mandated safety precaution might well stand on a different footing. See United Steelworkers v. Blaw-Knox Foundry & Mill Mach. Inc., 319 F.Supp. 636, 640–641 (W.D.Pa.1970). Or, in another case, there might be an adequate showing that employee disregard of work rules was seriously undermining an employer's ability to conduct his business. Here, however, there has been on the employer's part nothing more than the undifferentiated claim that there exists a right to make and enforce rules pending the outcome of a grievance and arbitration procedure, and we reject the contention that the labor injunction is available in the ordinary course of events as an enforcement mechanism. See Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18, supra (rejecting argument that, absent unusual circumstances, a party's appearance of powerlessness due to failure to prevent opposing party's unilateral action pending arbitration constitutes irreparable injury). We hold merely that in this case there was not a showing of potential injury adequate to support relief under general equitable principles. See Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18, supra; North American Coal Corp. v. Local Union 2262, 497 F.2d 459 (6th Cir. 1974); Pittsburgh Newspaper Printing Pressmen's Union No. 9 v. Pittsburgh Press Co., 479 F.2d 607 (3d Cir. 1973).

We are mindful of the repeated concessions of both parties that the underlying dispute on the wearing of tank-tops is an arbitrable one, and therefore find it unnecessary to incorporate in this court's judgment a direction that the district court order the parties to proceed to arbitration. Either party may return to the district court on that issue if that proves necessary.

Reversed.