AUTOMOBILE TRANSPORT, INC., a Michigan Corporation, Plaintiff,

v.

Alfred FERDNANCE et al., Defendants.

Civ. A. No. 6–71308.

United States District Court,
E. D. Michigan, S. D.

July 28, 1976.

A. Read Cone, Matheson, Bieneman, Parr, Schuler & Ewald, Bloomfield Hills, Mich., for plaintiff.

Ellis Boal, Detroit, Mich., for defendants.

Norman R. Robiner, Hoffa, Chodak & Robiner, Detroit, Mich., for Local 299.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

The plaintiff is the employer of the individually named defendants and a signatory to a collective bargaining agreement with defendant Teamsters, Local 299. It brought this action under 29 U.S.C. § 185 to recover damages from and to enjoin the continuation of picketing and a wildcat strike by the individual defendants and others acting in concert with them. The question before the court is whether it has the authority to issue a preliminary injunction against the wildcat strike under *Boys Markets, Inc. v. Retail Clerk's Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). The court concludes that it lacks authority to issue a preliminary injunction against this strike, because the dispute is not one which is arbitrable under the collective bargaining agreement.

The wildcat strike in this case occurred in the course of negotiations for a new contract which were being conducted by a multi-union, multi-employer bargaining association. The old contract expired by its terms on May 31, 1976. On May 21, 1976, it was extended indefinitely, in return for the employers' promise to make all monetary items in the forthcoming contract retroactive to June 1, 1976. On June 14, 1976, the proposed new contract was overwhelmingly rejected, but on June 16, 1976, the International's President, Frank Fitzsimmons, again extended the old contract and advised employers that any local unions engaged in a work stoppage were violating the contractual no-strike clause. On the morning of June 21, 1976, the plaintiff's employees attended a meeting at the local union headquarters, and in the course of this meeting, the bargaining team was expelled and the defendant Alfred Ferdnance addressed his fellow workers. At 2:00 p. m., Ferdnance and other workers stopped work and began picketing. The disruption ended in the early morning hours of June 23, 1976, in response to a restraining order issued by this court on June 22, 1976.

Testimony presented at an adversary hearing held July 2, 1976 revealed a variety of complaints. Some of these touched upon the employer's interpretation of the collective bargaining agreement. But it became clear at this hearing that the strikers' real concerns were directed against the union— the caliber of its representation at the bargaining table and at grievance proceedings. The workers were hostile to "sweetheart contracts" and angered about the new contract's failure to give them the right to strike over local grievances and to reflect bargaining demands concerning the utilization of equipment. When questioned on the picket line by a company employee, one of the strike leaders said that the strikers' grievance was with the union, not with Automobile Transport, Inc.

The bargaining agreement governing this dispute is the agreement which expired on May 31, 1976 and which was extended on May 21, 1976 and on June 16, 1976. This agreement contained the following no-strike, no-lockout clause, in conjunction with a broad arbitration clause:

"The Unions and the Employers agree that there shall be no strike, tie-up of equipment, slowdowns or walkouts on the

part of the employees, nor shall the Employer use any method of lockout or legal proceeding without first using all possible means of a settlement, as provided for in this Agreement, of any controversy which might arise.

"Any disputes the parties are unable to settle shall be referred to the appropriate Automobile Transporters Joint Conference Arbitration Committee, except for the following direct violations, which are non-disputable:

(a) Nonpayment of the established wage rates provided for in this Agreement, Supplements or Riders;

(b) Nonpayment of health and welfare contributions as provided for in this Agreement, Supplements or Riders;

(c) Nonpayment of pension contributions as provided for in this Agreement, Supplements or Riders.

(d) Noncompliance with Joint Conference Arbitration Committee decision with respect to Article 3, Section 4.

(e) This paragraph does not apply to disputes over the computation of wages or application of rates." Art. 7, § 1.

\*    \*    \*    \*    \*    \*

"Unless otherwise expressly provided in this Agreement, any and all disputes, including interpretations of contract provisions arising under, out of, in connection with, or in relation to this collective bargaining agreement, shall be subject to the grievance procedure of the Agreement." Art. 7, § 11.

The above language provides for the mandatory arbitration of contractual disputes. For present purposes, it may be assumed, without so deciding, that the strike in this case was in breach of the contractual no-strike clause.

The *Boys Markets* injunction is a narrow exception to the anti-injunction policy of the Norris-LaGuardia Act, 29 U.S.C. §§ 101–15. To be enjoinable under *Boys Markets,* it is not enough that the strike breaches a contractual no-strike clause; "there is no general federal anti-strike policy." *Buffalo Forge Co. v. United Steelworkers,* —— U.S. ——, at ——, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), *quoting Sinclair Refining Co. v. Atkinson,* 370 U.S. 195, 225, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962). The purpose of *Boys Markets* was to provide a means of enforcing promises to arbitrate. *Buffalo Forge Co., supra.* Under *Boys Markets,* this court has the power to enjoin a labor strike that is in breach of a no-strike agreement only if the dispute is subject to mandatory arbitration. The burden of proving every element required for injunctive relief is on the plaintiff. *North American Coal Corp. v. Mineworkers, Local 2262,* 497 F.2d 459, 465 (6th Cir. 1974).

The plaintiff in this case has not sustained its burden. All the evidence indicates that the primary dispute was between the strikers and their union, and that it concerned the terms and conditions of employment under the proposed contract. Such a dispute is a "labor dispute" within the meaning of the Norris-LaGuardia Act,[1] which is not arbitrable under the governing contract. *Cf. Emery Air Freight Corp. v. Teamsters, Local 295,* 2 Cir., 449 F.2d 586, 591 (1971), *cert. denied,* 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972). Although the arbitration clause is broad, it contains no provision for the arbitration of internal union disputes; nor does it contain any provision for interest arbitration. It is inconceivable to this court that such impor-

1. "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment . . . .." 29 U.S.C. § 113(c).

A case

"shall be held to involve or to grow out of a labor dispute when the case involves persons . . . who are members of the same or an affiliated organization of . . . employees [and the dispute is] between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' . . . of 'persons participating or interested' therein . . . .." 29 U.S.C. § 113(a).

tant matters could be read into the arbitration clause by implication.[2] The court therefore lacks the jurisdiction to enjoin this strike. 29 U.S.C. § 104.

■ The employer is not completely powerless when faced with a strike such as this one. Concerted economic activity by a minority of the bargaining unit is not protected by section 7 of the National Labor Relations Act, 29 U.S.C. § 157; the strikers may be discharged, and they have no reinstatement rights. *Plasti-Line, Inc. v. NLRB,* 278 F.2d 482 (6th Cir. 1960); *cf. Emporium Capwell Co. v. Western Addition Community Organization,* 420 U.S. 50, 95 S.Ct. 977, 43 L.Ed.2d 12 (1975) (efforts by minority to deal with employer's terms and conditions of employment as they affected racial and other minorities). And if the union did not use its resources adequately to oppose the strike, it may be liable under section 301 for damages flowing from it. *See North American Coal Corp., supra,* 497 F.2d at 467. *See generally,* Fishman and Brown, Union Responsibility for Wildcat Strikes, 21 Wayne L.Rev. 1017 (1975).

Plaintiff's motion for a preliminary injunction is denied, and the injunctive order entered on June 22, 1976 is set aside.

So ordered.

---

**2.** Although a no-strike clause may be implied where the strike involves an otherwise arbitrable dispute, *see Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974), no authority has been cited to this court for the obverse proposition: that a mandatory arbitration clause may be implied from a no-strike clause.