**JOSEPH SCHLITZ BREWING COMPANY CONTAINER DIVISION (Longview Texas Container Plant)**

v.

**GENERAL DRIVERS, WAREHOUSEMEN AND HELPERS LOCAL UNION 745 et al.**

Civ. A. No. TY–79–369–CA.

United States District Court,
E. D. Texas,
Tyler Division.

Nov. 14, 1979.

Erich F. Klein, Jr., Lyne & Klein, Dallas, Tex., Anthony J. Crement, Jeffrey L. Madoff, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for plaintiffs.

James L. Hicks, Jr., James C. Wilson, Hicks, Gillespie & James, Dallas, Tex., for defendants.

JUSTICE, District Judge.

## INTRODUCTION

Plaintiff Joseph Schlitz Brewing Company, Container Division (hereinafter referred to as "Schlitz"), seeks a preliminary injunction prohibiting employees at its can plant in Longview, Texas, from engaging in concerted slowdown or sabotage. Schlitz bases

its claim for an injunction on section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, in which Congress provided for enforcement of collective bargaining agreements. Schlitz contends that the employees of its Longview can plant have violated a no-strike provision in the collective bargaining agreement which presently binds the parties to this civil action, and that the union representing those employees has participated in, authorized, or ratified this violation. Because the alleged acts of slowdown and sabotage are said to arise out of a dispute arbitrable under the collective bargaining agreement, Schlitz argues that it is entitled to a labor injunction, the Norris-LaGuardia Act notwithstanding. *See Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); *United States Steel Corp. v. United Mine Workers of America*, 598 F.2d 363 (5th Cir. 1979); *Jacksonville Maritime Ass'n v. International Longshoremen's Ass'n*, 571 F.2d 319 (5th Cir. 1978); *United States Steel Corp. v. United Mine Workers of America*, 519 F.2d 1236 (5th Cir. 1975).

### FINDINGS OF FACT

1. Schlitz is a Wisconsin corporation doing business in Longview, Texas, within the Eastern District of Texas.

2. Schlitz maintains a multi-million dollar manufacturing and office facility at 1001 Fisher Road, Longview, Texas, where it is engaged in the production of two-piece aluminum beverage cans for twenty-four hours a day, seven days a week.

3. Defendant General Drivers, Warehousemen and Helpers Local Union 745, affiliated with the Southern Conference of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter referred to as "the union"), is an unincorporated association, commonly referred to as a labor union, which maintains its principal place of business at 1007 Jonelle, Dallas, Texas.

4. The union is, and at all times material to this civil action has been, the collective bargaining representative for production and maintenance employees at Schlitz's Longview container plant.

5. Defendant Raymond Monk is Assistant Business Representative of the union.

6. Defendant Edward Jackson is a Schlitz Longview container plant employee, who serves as chief union steward at Schlitz's Longview container plant.

7. The defendants designated as the "John Doe defendants" in plaintiff's complaint are representatives of a class of production and maintenance employees of Schlitz, who are represented by the union at Schlitz's Longview can plant.

8. Schlitz employs approximately 300 persons at the Longview container plant. Approximately 270 of the employees are represented by the union as their sole and exclusive bargaining agent.

9. On October 31, 1978, Schlitz entered into a collective bargaining agreement with the union covering employees at the Longview container plant. This agreement is valid and remains in full force and effect until October 31, 1981.

10. Article 5 of the collective bargaining agreement, referred to above, provides for a mandatory grievance and arbitration procedure, which establishes final and binding arbitration of all grievances arising under the agreement.

11. Article 5, section 1 of the collective bargaining agreement provides as follows:

A grievance within the meaning of this procedure shall be defined as any difference between the Company and the employee covered by this Agreement or between the company and the Union as to the following:

(a) Any matter relating to wages, hours of work or working conditions covered by this Agreement; or

(b) Any matter involving the meaning, interpretation, application or alleged violation of this Agreement by the Company.

The Company and the Union must resort to the use of the grievance procedure established herein; provided, however, that this shall not be construed as requir-

ing the originator to process a grievance which he considers as having insufficient or no merit.

12. Article 21 of the collective bargaining agreement provides as follows:

There are to be no strikes, work stoppages, concerted interference with normal operations, or lockouts during the term of this agreement.

13. Article 4, section 5, of the collective bargaining agreement sets forth the responsibility of management and the union in the event of unauthorized strike activity as follows:

The Stewards and Alternates have no authority to take strike action or any other action interrupting the Company's business, except as authorized by official action of the Union.

The Company recognizes these limitations upon the authority of the Stewards and their Alternates, and shall not hold the Union liable for any unauthorized acts, provided that in the event of an unauthorized action, the Union, through its Business Agent, shall notify the Steward, Alternates and members that the action is unauthorized and that such action should be terminated immediately. The Union's Business Agent, upon request, shall notify the Company whether or not the action is the authorized action of the Union. The Company in so recognizing such limitations shall have the authority to impose proper discipline, including discharge, in the event the Steward has taken unauthorized strike action, slowdown, or work stoppage in violation of this Agreement.

14. Roger Cunningham, a Longview plant employee and union steward, was moved by the management of the container plant from production lines 3 and 4 to production lines 1 and 2 on or about May 27, 1979.

(a) Cunningham was dissatisfied with this move, and management could not persuade him to be content with the move.

(b) Monk, as Assistant Business representative of the union, requested management at the container plant to move Cunningham back to lines 3 and 4. He testified that he believed that management acceded to his request.

(c) Management personnel testified, in effect, that they promised only to attempt to move Cunningham if such a move could feasibly be orchestrated with production requirements.

(d) Management thereafter decided that it was not possible to move Cunningham and, therefore, denied Monk's request.

(e) Monk became upset and irritated by the decision, because he felt that management had reneged on a promise.

15. During the period June 11, 1979, through August 1, 1979, Monk and Jackson stated, essentially, that (1) the people are cocked and ready, (2) the people would eat management's lunch, (3) the people could not be held back any more, (4) there would be big trouble, (5) management had lied about the Cunningham move, and (6) Cunningham had better be moved as promised.

16. Cunningham credibly testified that he is now reconciled to the move and will await his opportunity under the collective bargaining agreement to bid for another job assignment.

17. Roger Cunningham did not work in the Longview can plant from August 9, 1979, until October 18, 1979.

18. All parties to this civil action concede that management has an unfettered right under the contract to assign jobs to employees, so long as assignments are not used for disciplinary purposes. The union has not filed a grievance relating to the Cunningham transfer.

19. On August 5, 1979, a sewer line break required Schlitz to shut down the Longview container plant.

(a) Schlitz management does not presently believe that the sewer line break was the result of sabotage.

(b) Schlitz accused the union of sabotage shortly after the sewer break.

20. From August 6, 1979, through August 9, 1979, Schlitz was unable to resume normal can production at the Longview can plant.

(a) Production increased slowly after start-up because of the inexperience of personnel at job assignments and because of mechanical failure.

(b) In response to the slow start-up, plant manager Hand delivered a speech to employees in which he stated that he was totally unimpressed with the employees' work efforts.

(b) This, together with Hand's abolition of certain work amenities, caused unrest and discontent among a small number of unidentified employees, who thereafter engaged in acts of slowdown and sabotage.

21. On August 9, 1979, the management at the Longview container plant became dissatisfied with the low level of production and decided to send all of its employees home, thereby completely shutting down can production at the container plant.

22. Schlitz management decided not to produce cans at the Longview container plant, and it remained shut down from August 9, 1979, until August 23, 1979.

23. On August 23, 1979, Schlitz recalled one crew of employees to operate one can line.

(a) The can plant produced a low level output, primarily because of mechanical failure.

(b) Schlitz introduced evidence to show that electronic technician Lewis had conducted himself improperly on August 24, 1979, and that electronic technician Wireman had conducted himself improperly on August 23, 1979. Schlitz failed to show by the preponderance of the evidence, however, that either of these employees behaved improperly on the dates in question.

24. On August 25, 1979, the management of the Longview container plant again became dissatisfied with the low level of production and decided to send all of its employees home, thereby shutting down can production at the container plant.

25. Schlitz decided not to produce cans at the container plant and remained shut down from August 25, 1979, until September 12, 1979.

26. On September 12, 1979, management at the Longview container plant recalled one crew of employees to produce cans on one production line. Production was normal until September 22, 1979, when oil was found in the de-ionized water column on one production line. It is unclear how the oil got into the water system, but the circumstances suggest that an unidentified employee poured the oil into the de-ionized water system.

27. Because it found oil in the de-ionized water system, the management at the Longview container plant decided to send all of its employees home, thereby shutting down can production at the container plant.

28. Schlitz decided not to produce cans at the container plant and remained shut down from September 22, 1979, until September 30, 1979.

29. On September 30, 1979, management at the Longview container plant recalled sufficient employees to produce cans on two production lines. Production resumed on line 4 on September 30, 1979, and on line 3 on October 3, 1979.

30. On October 7, 1979, management at the Longview container plant recalled employees to work on lines 1 and 2. Can production on lines 1 and 2 began on October 7, 1979.

31. Schlitz's Longview container plant produced cans on all four lines from October 7, 1979, until October 23, 1979.

(a) On October 20, 1979, the internal coating oven for lines 1 and 2 operated for about one hour at a temperature too low to bake off harmful chemicals from the cans. Management was made aware of this condition by defendant Jackson.

(b) On October 21, 1979, a similar low-bake temperature existed for about five hours on the same oven.

(c) This low-bake condition probably was caused by mechanical problems in the production system, not by employee sabotage. A highly credible witness stated, in unrebutted testimony, that the plant manager expressed the opinion that sabotage was not responsible for the low-bake condition.

32. Because of the low-bake condition, the management of the container plant decided to send all of the employees home on October 23, 1979, thereby shutting down all can production at the Longview container plant. The plant continues to be shut down. There is now no substantial mechanical problem in the plant.

33. Schlitz's press department is located in the Longview can facility. It is staffed with union members, many of them also working in the can plant. Over one-fourth of the employees in the Longview facility work in the press department. No one asserts the existence of slowdown or sabotage in the press department.

34. At no time has an alarm been lighted or sounded at the can plant signalling that stop buttons on machines had been pushed.

35. No act of slowdown or sabotage that occurred at the can plant relates to the Cunningham transfer referred to above, or to any grievable matter which has been identified by the parties to this action.

36. Any act of slowdown which occurred at the Longview container plant resulted from isolated individual action, not mass action by the union membership.

37. Schlitz has not identified any employee responsible for sabotage, even though it has authorized, participated in, and ratified reprehensible investigative techniques.

38. Schlitz has never informed the union of any steward or any employee who participated in, authorized, or ratified strike or slowdown activity.

39. Schlitz has shown no connection between the union and any possible acts of slowdown or sabotage. Indeed, Jack Baker, the plaintiff's witness most responsible for dealing with the union, testified that he did not feel that the union was responsible for any problems that Schlitz may have had. Further, the plant manager testified that he was "puzzled" about the cause of the problems his plant experienced. Both the plant manager and the production supervisor have stated, as indicated by unrebutted testimony, a belief that a "sickie" is responsible for problems in the plant.

40. The union, through its secretary-treasurer Haddock and through Monk, has used all reasonable means affirmatively to disavow to its members in the Longview can plant any possibility that it supported or supports slowdown or sabotage activity. The union has specifically instructed the stewards and all employees to work within the collective bargaining agreement and not to slowdown or sabotage. These instructions have been clear and consistent.

41. Schlitz's representative deadlocked the last meeting of the grievance committee, thereby preventing it from taking any action.

42. Schlitz has disciplined no steward pursuant to its authority under article 4, section 5.

## CONCLUSIONS OF LAW

1. Venue is proper in the Eastern District of Texas, Tyler Division, pursuant to 28 U.S.C. § 1391(b).

2. Schlitz constitutes an industry affecting commerce within the meaning of section 2(6) of the National Labor Relations Act and section 301 of the Labor Management Relations Act.

3. Schlitz's Longview container plant employees, represented by the union, are working in an industry affecting commerce within the meaning of section 2(6) of the National Labor Relations Act and section 301 of the Labor Management Relations Act.

4. Whether Cunningham should be re-transferred to lines 3 and 4 is a grievable matter. *See Johnston-Tombigbee Furniture Mfg. Co. v. Local Union No. 2462,* 596

F.2d 126 (5th Cir. 1979); *Local Union No. 4–449 v. Amoco Chemical Corp.*, 589 F.2d 162 (5th Cir. 1979). *See also Friedrich v. Local No. 780*, 515 F.2d 225 (5th Cir. 1975).

5. Schlitz bears the burden of proof in showing that an injunction should issue. *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974); *North American Coal Corp. v. Local Union 2262*, 497 F.2d 459 (6th Cir. 1974).

6. Schlitz has failed to prove the necessary elements for the issuance of a *Boys Markets* injunction. The court therefore lacks jurisdiction to enter the preliminary injunction which Schlitz seeks. Specifically, the court lacks jurisdiction because:

(a) Schlitz has failed to prove by a preponderance of the evidence that the union has participated in, authorized, or ratified any slowdown or sabotage activity which may have occurred relates to any grievable matter. In particular, there has been no showing that the Cunningham transfer is related to any slowdown or sabotage activity which may have occurred.

(b) Schlitz has failed to show by a preponderance of the evidence that the union has participated in, authorized, or ratified any slowdown or sabotage activity in the Longview container plant, even if it is assumed that all of Schlitz's allegations regarding such activity are true. *See especially Ritchie v. United Mine Workers of America*, 410 F.2d 827 (6th Cir. 1968). *See* 29 U.S.C. § 106 (clear and convincing proof standard on union responsibility); *Ramsey v. United Mine Workers of America*, 401 U.S. 302, 91 S.Ct. 658, 28 L.Ed.2d 64 (1971); *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *United States Steel Corp. v. United Mine Workers of America*, 598 F.2d 363 (5th Cir. 1979); *Fleming Bldg. Co. v. Northeastern Oklahoma Bldg. & Construction Trades Council*, 532 F.2d 162 (10th Cir. 1976); *North American Coal Corp. v. Local Union 2262*, 497 F.2d 459 (6th Cir. 1974); *Kayser-Roth Corp. v. Textile Workers Union of America*, 479 F.2d 524 (6th Cir. 1973).

(c) The union has used all reasonable means to make, and has, in fact, made it plain to stewards and employees at the Longview plant that any slowdown activity is expressly disapproved by the union. It has, therefore, satisfied its contractual obligation, as set forth in article 4, section 5, of the collective bargaining agreement. *See Black Diamond Coal Mining Co. v. Local Union No. 8460*, 597 F.2d 494 (5th Cir. 1979); *Turnkey Constructors, Inc. v. Cement Masons Local Union No. 685*, 580 F.2d 798 (5th Cir. 1978); *Eazor Express, Inc. v. International Bhd. of Teamsters*, 520 F.2d 951 (3d Cir. 1975).

7. Because this court lacks jurisdiction to issue the injunction which Schlitz requests, it is unnecessary to consider whether traditional equitable principles favor the issuance of an injunction. *Cf. Anheuser-Busch, Inc. v. Teamsters Local No. 633*, 511 F.2d 1097 (1st Cir. 1975).

## CONCLUSION

It is obvious that relations between employees at the Longview container plant and management are strained. Regardless of the cause of these difficulties, it is apparent that they do not relate to the Cunningham transfer and that the union is not responsible for, nor has it ratified, any action in breach of the collective bargaining agreement which binds the parties to this civil action.

It would, moreover, be impractical to issue an injunction. First, if all of the alleged acts were to reoccur, the court could not lawfully hold the union in contempt of any order that it might issue if the evidence of union connection were as weak as it presently is. Second, any injunction that might be issued must be accompanied by an order to Schlitz to arbitrate the Cunningham transfer. It would be unwise to order

such arbitration because: (a) The union concedes that management had an absolute right to transfer Cunningham; and (b) Cunningham himself has become reconciled to his transfer. The present situation seems to call for open discussion, not a court injunction. Accordingly, it is

ORDERED that Schlitz's motion for a preliminary injunction shall be, and it is hereby, DENIED.