The STATE of Ohio, Appellee,

v.

TOMAINO, Appellant.

[Cite as *State v. Tomaino* (1999), 135 Ohio App.3d 309.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA98–10–212.

Decided Aug. 16, 1999.

310

*John F. Holcomb*, Butler County Prosecuting Attorney, *Daniel J. Gattermeyer*, Assistant Prosecuting Attorney, for appellee.

*Sirkin, Pinales, Mezibov & Schwartz, H. Louis Sirkin, Laura A. Abrams* and *Daniella A. Westermeyer*, for appellant.

WALSH, Judge.

Defendant-appellant, Peter Tomaino, appeals his conviction for disseminating matter harmful to juveniles in violation of R.C. 2907.31. We reverse and remand for further proceedings.

Appellant owns VIP Video, a video sales and rental store in Millville, Ohio. VIP Video's inventory includes only sexually-oriented videotapes and materials. On October 13, 1997, Carl Frybarger, age thirty-seven, and his son Mark, age seventeen, decided that Mark should attempt to rent a video from VIP. Mark entered the store, selected a video, and presented it to the clerk along with his father's driver's license and credit card. The purchase was completed and the Frybargers contacted the Butler County Sheriff's Department. After interviewing Mark and his father, Sergeant Greg Blankenship, supervisor of the Drug and Vice Unit, determined that Mark should again attempt to purchase videos at VIP Video with marked money while wearing a radio transmitter wire. On October 14, 1997, Mark again entered the store. A different clerk was on duty. Following Blankenship's instructions, Mark selected four videos and approached the clerk. He told her that he had been in the store the previous day and that he was thirty-seven. Mark told the clerk that he had used a credit card on that occasion and that he was using cash this time and thus did not have his identification with him. The clerk accepted the cash ($100) and did not require any identification or proof of Mark's age. It is this video transaction that constitutes the basis of the indictment.

The clerk, Billie Doan, was then informed by Blankenship that she had sold the videos to a juvenile and that she would be arrested. Doan said that she needed to call appellant and made several unsuccessful attempts to contact appellant at different locations.

The grand jury indicted appellant, Doan, and VIP Video on two counts.[1] Count One charged the defendants with recklessly disseminating obscene material to juveniles and Count Two charged the defendants with disseminating matter that was harmful to juveniles.

Doan was tried separately from appellant. Appellant moved to dismiss the indictment against him. During pretrial proceedings, appellant argued that criminal liability could not be imputed to him based on the actions of the clerk. The state moved to amend the bill of particulars to provide that appellant "recklessly failed to supervise his employees and agents." The trial court denied appellant's motion to dismiss and the case against appellant proceeded to a jury

---

1. Appellant states that the charge against VIP Video was later dismissed and proceedings continued against Doan and appellant individually.

trial on August 25, 1998. Mark and Carl Frybarger and Blankenship testified on behalf of the state; the defense presented no evidence. Counsel for appellant made a motion for acquittal pursuant to Crim.R. 29 at the close of the state's case. The trial court overruled the motion.

The state argued that appellant was reckless by not having a sign saying "no sales to juveniles." Appellant argued in part that he was not liable for the clerk's actions. The jury was instructed that in order to convict they must find beyond a reasonable doubt that appellant, recklessly and with knowledge of its character or content, sold to a juvenile any material that was obscene (Count One) and harmful to a juvenile (Count Two).

The jury was also instructed on the definitions of knowingly and recklessly and on the definitions of obscene material and of material harmful to juveniles. The jury found appellant not guilty on Count One (disseminating obscene material) and guilty on Count Two (disseminating matter harmful to juveniles). Following the verdict, appellant moved for both a judgment of acquittal and a new trial. Appellant again argued that he could not be held criminally liable for the acts of another and that there was no evidence that he had recklessly provided material harmful to a juvenile. The trial court denied both motions by judgment entry dated September 29, 1998. The court stated that the jury could find that appellant was the owner of the store and thus had knowledge of the character or content of the material being sold in his store. The court also stated that appellant "did not implement any policies, plans or procedures to prohibit entrance of juveniles into his store or the sale of material to juveniles."

Appellant has raised one assignment of error:

"The trial court erred as a matter of law when it denied Mr. Tomaino's Rule 29(C) motion for judgment of acquittal and, in the alternative, motion for a new trial."

Appellant raises five different issues under this assignment of error; we find that appellant's first issue is dispositive. Appellant argues that his Crim.R. 29 motion should have been granted because no statute imposed criminal liability for his actions or inactions. Having carefully reviewed the state's arguments, we must agree, although we hold that the court erred in its instructions to the jury rather than in denying the motion for acquittal.

Appellant was convicted of disseminating matter harmful to juveniles. R.C. 2907.31 provides in relevant part:

"(A) No person, with knowledge of its character or content, shall recklessly do any of the following:

"(1) Sell, deliver, furnish, disseminate, provide, exhibit, rent, present to a juvenile any material or performance that is obscene or harmful to juveniles."

We begin with a proposition that the state does not and cannot dispute: Ohio has no common law offenses. R.C. 2901.03 provides:

"(A) No conduct constitutes a criminal offense against the state unless it is *defined as an offense in the Revised Code.*

"(B) An offense is defined when one or more sections of the Revised Code *state a positive prohibition or enjoin a specific duty* and provide a penalty for violation of such prohibition or failure to meet such duty." (Emphasis added.)

In interpreting this language, the Ohio Supreme Court has noted that criminal liability is "rigidly and precisely limited to those situations that the General Assembly has specifically delineated by statute." *State v. CECOS Intern., Inc.* (1988), 38 Ohio St.3d 120, 122, 526 N.E.2d 807, 810. In R.C. 2901.21, the legislature has further provided that a person is not guilty of an offense unless both of the following apply:

"(1) His liability is based on conduct which includes either a voluntary act, or an omission to perform an act or duty which he is capable of performing;

"(2) He has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense."

The state argues that because appellant was "capable of performing" actions to prevent juveniles from entering his store he can be held criminally liable for the clerk's actions. However, the state's theory would create a common law crime based on appellant's failure to act. The legislature, under R.C. 2907.31, the offense charged in this case, has not specifically provided a penalty for the failure to meet the duty the state has posited, *i.e.* the duty to keep juveniles out of such stores. As the legislative comments indicate, R.C. 2901.21 codified the "fundamental distinction between criminal conduct on the one hand and innocent conduct or accident on the other: that, generally, an offense is not committed unless a person not only does a forbidden act or *fails to meet a prescribed duty,* but also has a guilty state of mind at the time of his act or failure." (Emphasis added.)

Vicarious liability for another's criminal conduct or failure to prevent another's criminal conduct can be delineated by statute; it cannot be created by the courts. Statutes defining offenses are to be strictly construed against the state and liberally construed in favor of the accused. R.C. 2901.04. The elements of a crime must be gathered wholly from the statute. *State v. Warner* (1990), 55 Ohio St.3d 31, 564 N.E.2d 18. Where a duty of supervision is specifically enjoined by a statute, a failure to meet such a duty can be the basis for criminal liability. For instance, criminal liability for endangering children can be based on the combination of one's status as a parent, guardian, or person

having custody and control of a child with either positive acts such as abuse or allowing the child to act in nudity oriented matter, or by *"violating a duty of care, protection, or support."* (Emphasis added.) R.C. 2919.22.

Liability based on ownership or operation of a business may also be specifically imposed by statute. For instance, the owner of premises used for gambling— even if he is not present while gambling occurs—can be criminally liable under the statute prohibiting operating a gambling house. Such premises oriented liability is specifically imposed by the statute, which provides in part that "no person being the owner * * * of premises, shall * * * [r]ecklessly permit such premises to be used or occupied for gambling." R.C. 2915.03.

Significantly, the legislature has also made it an offense for one who "has custody, control, or supervision of a commercial establishment * * * [to] display at the establishment any material that is harmful to juveniles and that is open to view by juveniles as part of the invited general public." R.C. 2907.311.

However, appellant was not prosecuted under this statute or under any statute that purports to impose criminal liability for allowing one's premises to be used for the offense of selling proscribed material. Inexplicably, the jury was not instructed on the issue of whether appellant aided and abetted the clerk in the commission of the crime that was charged, *i.e.*, R.C. 2907.31. The jury was instructed that appellant was charged as a principal offender in recklessly disseminating material harmful to juveniles. While an aider and abettor may be charged as a principal, appellant's absence from direct participation required the jury to decide the issue of aiding and abetting before rendering a guilty finding.

As noted above, the state posited, and the trial court apparently accepted, that appellant could be criminally liable because he failed to supervise his employees and take affirmative steps to keep juveniles from entering his store and purchasing videos. However, as we have determined, no statute specifically criminalizes this failure. Although such failure may provide circumstantial evidence of appellant's complicity in the clerk's criminal actions, appellant was not indicted or prosecuted and the jury was not instructed under a complicity theory. It is undisputed that the clerk furnished the video to the minor and that appellant was not present. Because we find that a plain reading of the disseminating matter harmful to juveniles statute requires personal action by a defendant unless the issue of aiding and abetting is submitted, and does not by its terms impose vicarious or premises oriented liability, the jury was not correctly instructed in this case.

Reduced to its essence, the trial court was presented with a question of statutory interpretation, *i.e.*, whether personal criminal liability for recklessly disseminating matter could be imposed based on evidence that appellant reckless-

ly supervised the clerk and the premises where the offense occurred. Because the legislature has not criminalized such conduct or more particularly such inaction, the trial court erred by submitting the case to the jury without any instructions on aiding and abetting as it is only under a complicity theory that the appellant could be lawfully adjudged guilty of the charged offense.[2]

■ After arguments are completed, a trial court must fully and completely give the jury all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder. *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640. In light of this analysis, we have concluded that the trial court committed plain error in its instructions to the jury by failing to instruct on aiding and abetting. As given, the court's instructions implied that appellant could be found guilty based on the sale alone regardless of his lack of direct participation in that sale.

■ We emphasize that our reversal is predicated upon the error of law committed by the trial court. It is not based upon insufficient evidence. Thus, on remand, the state is not precluded by the Double Jeopardy Clause from retrying appellant as a complicitor with the clerk in the commission of the offense. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546–547, (explaining that retrial is barred if a reversal is based upon a finding that the evidence was legally insufficient to support the conviction).

Appellant's remaining arguments for acquittal or a new trial are rendered moot by our decision to reverse on the ground that the trial court's jury instructions constituted plain error. Accordingly, the judgment of the trial court is reversed, and the case is hereby remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

POWELL, P.J., and WILLIAM W. YOUNG, J., concur.

---

**2.** R.C. 2923.03(F) provides that a person who violates R.C. 2923.03 is guilty of complicity in the commission of an offense and shall be prosecuted and punished as if the person were a principal offender. "A charge of complicity may be stated in terms of this section, or in terms of the principal offense." *Id.* Although the phrase "aid and abet" is not defined in the complicity statute, the courts have consistently held that "aid" means to assist and "abet" means to incite or to encourage. *State v. Mootispaw* (1996), 110 Ohio App.3d 566, 674 N.E.2d 1222. A person's mere association with the principal offender is not enough. However, the state may demonstrate a person's aiding and abetting of another in the commission of a crime through both direct and circumstantial evidence and "criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." *Id.* at 570, 674 N.E.2d at 1224.