[Cite as *In re Feagan*, 2020-Ohio-3788.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

IN RE: GLENN FEAGAN, ESQ.        :         APPEAL NO. C-190544
                                                TRIAL NO. M-1900923

                                         :               *O P I N I O N.*

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: July 22, 2020

*Paul W. Flowers Co., L.P.A.*, and *Louis E. Grube*, for Appellant Glenn Feagan, Esq.,

*Schroeder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere* and *Katherine L. Barbiere*, for Appellee Honorable Mark R. Schweikert.

**MOCK, Presiding Judge.**

{¶1}   Appellant Glenn Feagan, Esq., appeals from the decision of the Hamilton Count Court of Common Pleas finding him in contempt and ordering him to pay a $250 fine.  We find merit in one of his two assignments of error, and we reverse the finding of contempt and order Feagan discharged.

### *Factual Background*

{¶2}   The record shows that in August of 2017, the Ohio Supreme Court appointed appellee retired Judge Mark Schweikert ("the judge") to oversee hundreds of medical-malpractice cases pending in the Hamilton County Court of Common Pleas against former spine surgeon Abubaker Atiq Durrani.  Many of the plaintiffs in those cases were represented by the Deters Law Firm.  Eric C. Deters is a paralegal and victim advocate for the firm.

{¶3}   On April 27, 2018, the judge issued orders under more than 450 different case numbers prohibiting public comment on all pending Durrani cases. The orders stated, "This Court has found that continued extrajudicial statements about this case are reasonably likely to prejudice the proceedings and inhibit the right of the parties to a fair and impartial jury."

{¶4}   Specifically, the orders prohibited "all parties to the pending cases, their counsel, employees, agents, and witnesses they control" from "discussing, or posting information about, the cases and their merits with the general public through written or electronic media, the Internet, including social media, blogs, and similar media formats in any form[.]"   They also prohibited the same individuals from participating in "interviews with the media and/or from making public statements generally, including public demonstrations regarding the pending cases."  The judge

characterized these orders as agreed orders in settlement of motions for contempt filed by the Durrani defendants against Deters for violating previous orders prohibiting public comment on the Durrani litigation.

{¶5} In January 2019, the Durrani defendants again filed motions asking that Deters and some associated attorneys be found in contempt for violating the April 27, 2018 order. The judge held a hearing on March 22, 2019, and personally admonished Deters for his violations of the judge's order. He advised Deters that further violations would be met with discipline and likely incarceration.

{¶6} The judge became concerned that some of the attorneys in the litigation were attempting to avoid responsibility for some of the actions of individuals involved in the cases. In an attempt to "rein in what has been happening in this litigation," he issued orders on May 30, 2019, which required the attorneys representing parties in the litigation to file a one-time designation of trial attorney under Loc.R. 10 of the Hamilton County Court of Common Pleas. That attorney would be "responsible for the conduct of all proceedings regarding the case * * *." The orders further stated,

> The Trial Attorney remains responsible for the conduct of all proceedings regarding the case including but not limited to any act sanctionable at law or in contempt, and such acts of any and all attorneys, associates, contractors, employees, or other persons or entities engaged in the litigation on behalf of the party or parties represented by the Trial Attorney.

{¶7} On June 10, 2019, Charles Deters, the owner of the Deters Law Firm, transferred his interest in the firm to Feagan. On July 15, 2019, Feagan complied with the court's May 30, 2019 orders and filed signed designations of trial attorney in

approximately 450 cases memorializing that he had been designated trial attorney for those cases.

{¶8} On July 31, 2019, the judge entered a second set of orders to again settle contempt charges against Deters and some associated attorneys for violations of the April 27, 2018 order. The July 31, 2019 orders required the designated trial attorneys, including Feagan, to monitor and report violations of the court orders.

{¶9} Subsequently, the judge learned that Deters was again posting comments regarding the Durrani litigation on social media and that he was planning a public protest on the courthouse steps on August 22, 2019. The judge journalized notices to the parties stating,

> It has come to the attention of the Court that Eric Deters has by social media proposed to organize a protest of this Court and the Ohio Justice System proceedings during the Durrani litigation on August 22, 2019. The parties and designated Trial Attorneys are hereby notified that to the extent that any such activity is a violation of this Court's previous orders to refrain from public comment regarding these proceedings, and if the acts in violation are observed by the Hamilton County Sheriff or other officer of this Court, this Court will treat such act as a Direct Contempt subject to possible incarceration of those subject to the previous order of the Court. Designated Trial Attorneys are reminded of their responsibilities for their associates and clients subject to the Court's order.

{¶10} Despite the notices, Deters went forward with the protest on the front steps of the courthouse. It was organized in response to the judge's orders denying the plaintiffs' requests for group trials. Hamilton County Sheriff's Deputy Michael

4

Dreyer was present at the event. His job was to provide security for Judge J. Howard Sundermann. The judge had called Judge Sundermann, who had tried several of the Durrani cases, from Florida and had asked him to attend the gathering and to encourage Deters to avoid violating the order. Before the event began, Deters spoke with Judge Sundermann and told him that Deters's plan was to criticize the management of the litigation against Durrani. Deters testified that Judge Sundermann told him that he was allowed to criticize the courts. We note that Judge Sundermann did not testify at the contempt hearing because he was not subpoenaed to appear at the hearing.

{¶11} Deters made comments at the protest that directly pertained to the Durrani litigation. A recording of the protest was posted on Deters's Facebook page. His Facebook page also encouraged news media to record his comments and report to the public about the Durrani litigation, and at least one news station reported some of his comments on the air and on the internet. Deters also posted reports of jury verdicts in the Durrani cases, which the judge had previously order sealed, on his Facebook page.

{¶12} Following the protest, the judge entered show-cause orders to Deters, Feagan, and two other associated attorneys, Alan Statman and Benjamin Maaran, II, notifying them to appear to show cause why they should not be held in contempt. As to Feagan, the orders stated that "Glenn Feagan has designated as a Trial Attorney for Plaintiffs in the above captioned case and is associated with Eric Deters in the prosecution of this case through the Deters Law firm and as the designated Trial Attorney is responsible for sanctionable acts of his employees and associates * * *."

{¶13} At a hearing held on September 3, 2019, the judge found that Deters's conduct was intended to violate the court's orders and to "disrupt * * * efforts to

5

provide fair and impartial justice to these parties." The judge also found that it was Deters's "intention to try to influence this jury pool." He found Deters in contempt and sentenced him to 15 days in jail at a minimum, and ordered that he should remain there after the 15 days until all references to the Durrani litigation were removed from the internet.

{¶14} Feagan's contempt hearing was held the following day. He stipulated to the admission of the court's exhibits that had been admitted in Deters's hearing the day before. Feagan testified that he was not present at the public protest on August 22, 2019, and that he was in Canton, Ohio that day. He acknowledged that he was the principal lawyer at the Deters Law Firm and that he understood that Deters had testified that he only acts with permission of his superiors. But he also indicated that he had just taken over the business.

{¶15} Feagan testified that when he had first heard about the protest, he was in Canton, Ohio. He stated,

> I think the night before when I heard that this was going to occur, I spoke to Eric Deters. I was assured that nothing was going to be mentioned about Dr. Durrani; that everything was going to be in compliance with the gag order; that it would be completely within its parameters; that it was going to be a peaceful assembly to draw attention to the clients not getting trials in Hamilton County; that there was going to be no mention of any specifics of any of the cases. And that this is without a doubt going to be on the up-and-up and there would be no issues.

{¶16} Feagan further indicated that the first thing that morning, he had gone to see Deters at the jail and told him how he felt about what had happened. He told

Deters that "as a business owner, I don't ever want to be put in that position again. I don't want my trial counsel to be put in that position again. It's disrespectful to the Court." He said that Deters had assured him that it would never happen again.

{¶17} The next thing that Feagan did was to contact the administrator of the Independence, Kentucky office of the Deters Law Firm and order all Facebook posts and social media references to be immediately taken down, and that no additional posts would be made. He made sure that an email went out to their clients stating that they were not to post anything about the litigation.

{¶18} The judge found Feagan to be in contempt and fined him $250 and costs. The judgment entry stated that Feagan, as the principal attorney of the Deters Law Firm and the designated trial attorney was "responsible to this Court for any act of Eric Deters sanctionable in contempt." This appeal followed.

{¶19} Feagan presents two assignments of error for review. In his first assignment of error, he contends that the judge's finding of contempt was not supported by sufficient evidence. In his second assignment of error, he contends that the contempt finding was against the manifest weight of the evidence. He argues that "[t]he law does not provide for a vicarious indirect criminal contempt." He also argues that the uncontradicted proof showed that he "acted affirmatively with the conscious intent to ensure compliance with a court order."

{¶20} Though Feagan raises both weight and sufficiency of the evidence, his arguments go to the sufficiency of the evidence. Because we hold that there was insufficient evidence to find Feagan guilty of criminal contempt, we find his first assignment of error to be well taken.

{¶21} R.C. 2705.02 provides that a person may be punished by contempt for "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or

7

command of a court or officer * * *." The Ohio Supreme Court has defined contempt of court as the disobedience of a court order. "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede, or obstruct the court in the performance of its functions." *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988); *Troja v. Pleatman*, 1st Dist. Hamilton No. C-150746, 2016-Ohio-5294, ¶ 10. The court's authority to punish contempt is both inherent and statutory. *Denovchek* at 15; *Troja* at ¶ 10.

{¶22} Though the judge once stated that the contempt was direct, the parties now concede that the case involves indirect criminal contempt. We agree. *See in re Deters*, 1st Dist. Hamilton No. C-190516, 2020-Ohio-3518, ¶ 8-12; *Denovchek* at 16; *State v. Kilbane*, 61 Ohio St.2d 201, 204-205, 400 N.E.2d 386 (1980); *State v. Stegall*, 1st Dist. Hamilton Nos. C-110767, C-120112 and C-120113, 2012-Ohio-3792, ¶ 38. "[C]riminal contempt is a crime in every fundamental respect * * *." *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 252, 416 N.E.2d 610 (1980), quoting *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). Therefore, all of the elements of criminal content must be proven beyond a reasonable doubt. *Midland Steel Products Co. v. U.A.W., Local 486*, 61 Ohio St.3d 121, 127, 573 N.E.2d 98 (1991); *In re Thomas*, 1st Dist. Hamilton No. C-030429, 2004-Ohio-373, ¶ 5; *Rohr Corp. v. Wendt & Sons, Inc.*, 1st Dist. Hamilton No. C-961051, 1997 WL 770161, *3 (Dec. 12, 1997).

{¶23} At the beginning of the contempt hearing, the parties asked for clarification about the basis of the contempt allegation. Statman's attorney stated,

the way I understand your order to show cause, is that the issue for

Mr. Statman is that he would be responsible for acts of Mr. Deters that

are within the evidence that you've submitted because of his designation of trial attorney under Rule 10 of the local rules.

In other words, there's not an allegation, and I didn't find anything in any of those exhibits that there was some affirmative act that the Court maintains that Mr. Statman performed or did not perform that violated the Court's gag order.

{¶24} The judge stated, "That's correct," and agreed that the same was true for Feagan and Maraan. Thus, the judge's finding of contempt was based solely on Deters's conduct and Feagan's status as the designated trial attorney.

{¶25} The designations require the "Trial Attorney" to be responsible for "the conduct of all proceedings regarding the case unless someone else is subsequently designated." Even if the designations attempted to impose vicarious liability on the "Trial Attorney" for the actions taken by employees engaged in the litigation, Feagan cannot be vicariously liable for Deters's conduct.

{¶26} Under R.C. 2901.21(A), a crime consists of a voluntary act and the requisite mental state to commit that act. *Maple Hts. v Ephraim*, 178 Ohio App.3d 439, 2008-Ohio-4576, 898 N.E.2d 974, ¶ 37 (8th Dist.); *State v. Carusone*, 1st Dist. Hamilton No. C-010681, 2003-Ohio-1018, ¶ 44. Vicarious liability "imputes the acts of one person to another." *Maple Hts.* at ¶ 39. It is a "departure from generally accepted principles of criminal culpability * * *." *Id.* at 43.

{¶27} While vicarious liability for another's criminal conduct or failure to prevent another's criminal conduct can be created by statute, it cannot be created by the courts. *State v. Tomaino,* 135 Ohio App.3d 309, 313, 733 N.E.2d 1191 (12th Dist.1999). The contempt statute requires an affirmative act of disobedience of or resistance to a court order.

{¶28} In *N. Am. Coal Corp. v. Local Union 2262, United Mine Workers of Am.*, 497 F.2d 459 (6th Cir.1974), a union and eight of its officers were held in contempt by the trial court for violating an injunction against "continuing, encouraging, and picketing in support of a work stoppage * * *." *Id.* at 461. The court entered the contempt finding even though the union officers had urged that work resume and had made "valiant efforts" to get the workers back to work. The court stated, "A Union is voluntary organization of members who seek a common goal. The officers of that Union must accept responsibility for the acts thereof. This Court is not willing to allow its orders to be defied." *Id.*

{¶29} The Sixth Circuit Court of Appeals reversed the trial court's contempt finding. It held that "there is simply no such thing as vicarious liability of an individual for contempt." *Id.* at 465. The court noted that the strike was never authorized by the union or any of its officers. "There is not a line of testimony that any one of those found guilty of criminal contempt ever did anything to initiate, encourage or continue the strike. The sworn testimony on the contrary was that they repeatedly sought to terminate it by conveying the orders of the court and by themselves ordering the miners back to work." *Id.*

{¶30} We find this case to be persuasive. The record contains no evidence that Feagan initiated or encouraged Deters to violate the court's order. To the contrary, he contacted Deters the night before to ensure that Deters would not violate the court order. The judge's contempt finding against Feagan rested solely on his duty to be responsible for the case and to supervise Deters. But there is no evidence that Feagan ratified Deters's conduct in violating the court order or that he did any affirmative act in violation of the court order that would have justified a finding of contempt.

**{¶31}** Consequently, we hold that the evidence was insufficient to support the judge's finding that Feagan was in contempt. We sustain Feagan's first assignment of error and discharge him. We find his second assignment of error to be moot, and we decline to address it.

Judgment reversed and appellant discharged.

**CROUSE, J.,** concurs.
**ZAYAS, J.,** concurs in judgment only.

Please note:

The court has recorded its own entry this date.