[Cite as *In re Statman*, 2020-Ohio-4285.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO


IN RE:  ALAN STATMAN, ESQ.  :  APPEAL NO. C-190542
TRIAL NO. M-1900921


IN RE:  BENJAMIN MARAAN, II, ESQ.  :  APPEAL NO. C-190543
TRIAL NO. M-1900922


:  *O P I N I O N.*


Criminal Appeals From:  Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Reversed and Appellants Discharged

Date of Judgment Entry on Appeal: September 2, 2020


*Robert A. Winter, Jr.*, for Appellants Alan Statman, Esq., and  Benjamin Maraan, II, Esq.,

*Schroeder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere* and *Katherine L. Barbiere*, for Appellee Honorable Mark R. Schweikert.

CROUSE, Judge.

{¶1}  Appellants Alan Statman, Esq., and Benjamin Maraan, II, Esq., appeal from the decisions of the Hamilton Count Court of Common Pleas finding them in contempt and ordering them each to pay a $250 fine.  We have sua sponte consolidated their appeals for opinion. We find merit in their assignments of error, and we reverse the findings of contempt and order them discharged.

### Factual Background

{¶2}  The record shows that in August of 2017, the Ohio Supreme Court appointed appellee retired Judge Mark Schweikert ("the judge") to oversee hundreds of medical-malpractice cases pending in the Hamilton County Court of Common Pleas against former spine surgeon Abubaker Atiq Durrani.  Many of the plaintiffs in those cases were represented by the Deters Law Firm.  Eric C. Deters was a paralegal and victim advocate for the firm.

{¶3}  Statman represented plaintiffs in several of the Durrani cases, including *Hayes v. Durrani*, A-1706454, filed in the Hamilton County Court of Common Pleas.  He had a contractual agreement with the Deters Law Firm, which was entered into while Charles Deters owned the law firm.

{¶4}  Maraan is a solo practitioner who shares office space in downtown Cincinnati with the Deters Law Firm.  He was a party to a lease agreement with two other solo practitioners, separate from the Deters Law Firm.  He has a contractual relationship with the Deters Law Firm to work on some of the Durrani cases.  Maraan's work on those cases involved helping "cover * * * depositions, do pleadings, some of motion practice, that sort of thing."  Initially he was "third chair," but in the last five or six trials, he "served as a second-chair capacity" to Statman.

2

{¶5} On April 27, 2018, the judge issued orders under more than 450 different case numbers prohibiting public comment on all pending Durrani cases. The orders stated, "This Court has found that continued extrajudicial statements about this case are reasonably likely to prejudice the proceedings and inhibit the right of the parties to a fair and impartial jury."

{¶6} Specifically, the orders prohibited "all parties to the pending cases, their counsel, employees, agents, and witnesses they control" from "discussing, or posting information about, the cases and their merits with the general public through written or electronic media, the Internet, including social media, blogs, and similar media formats in any form[.]" They also prohibited the same individuals from participating in "interviews with the media and/or from making public statements generally, including public demonstrations regarding the pending cases." The judge characterized these orders as agreed orders in settlement of motions for contempt filed by the Durrani defendants against Deters for violating previous orders prohibiting public comment in the Durrani litigation.

{¶7} In January 2019, the Durrani defendants filed motions asking that Deters, Statman, Maraan, and others be found in contempt for violating the April 27, 2018 order. The judge held a hearing on March 22, 2019, and personally admonished Deters for his violations of the judge's order. He advised Deters that further violations would be met with discipline and likely incarceration. No one was found to be in contempt at that time.

{¶8} The judge became concerned that some of the attorneys in the litigation were attempting to avoid responsibility for some of the actions of individuals involved in the cases. In an attempt to "rein in what has been happening in this litigation," he issued orders on May 30, 2019, which required the attorneys

representing parties in the litigation to file a one-time designation of trial attorney under Loc.R. 10 of the Hamilton County Court of Common Pleas. That attorney would be "responsible for the conduct of all proceedings regarding the case * * *." The orders further stated,

> The Trial Attorney remains responsible for the conduct of all proceedings regarding the case including but not limited to any act sanctionable at law or in contempt, and such acts of any and all attorneys, associates, contractors, employees, or other persons or entities engaged in the litigation on behalf of the party or parties represented by the Trial Attorney.

{¶9} On July 12, 2019, Statman complied with the court's May 30, 2019 orders and filed a signed designation of trial attorney in a number of cases, including the *Hayes* case. On July 15, 2019, Glenn Feagan filed signed designations of trial attorney in approximately 450 cases memorializing that he had been designated trial attorney for those cases. Feagan had become the owner of the Deters Law Firm after the previous owner, Charles Deters, had transferred his interest in the firm to him.

{¶10} On July 31, 2019, an entry was journalized adopting a "contempt resolution agreement." The agreement stated that its purpose was to resolve contempt charges brought by the Durrani defendants against Deters, Statman, Maraan, and others for alleged violations of the April 27, 2018 order. Maraan was included even though he was not yet a designated trial attorney in any of the Durrani cases. The agreement stated that the designated trial attorneys agreed to monitor and report violations of the court orders.

{¶11} As to Statman and Maraan, the agreement stated,

4

Respondents Alan Statman and Benjamin Maraan II agree that if they learn of a violation [of the April 27, 2018 gag order,] they will report that violation to the Court. It is understood that Respondents Statman and Maraan are not employees of the Deters Law Firm Co., L.P.A. It is understood that Mr. Statman's and Mr. Maraan's obligations to report a violation are based on their own personal knowledge or actual knowledge of said violation.

Statman's and Maraan's names were specifically removed from paragraph two of the agreement which would have required them to prevent all employees, agents and independent contractors of The Deters Law Firm from violating the April 27, 2018 order.

{¶12} On August 16, 2019, Maraan filed a motion to designate himself as the lead trial attorney in *Chhun v. Durrani*, A-1706417, which was the first time that Maraan had assumed the duties and responsibilities of a designated trial attorney. He replaced Statman, who was previously the designated trial attorney in that case.

{¶13} Subsequently, the judge learned that Deters was again posting comments regarding the Durrani litigation on social media and that he was planning a public protest on the courthouse steps on August 22, 2019. The judge journalized notices to the parties stating,

It has come to the attention of the Court that Eric Deters has by social media proposed to organize a protest of this Court and the Ohio Justice System proceedings during the Durrani litigation on August 22, 2019. The parties and designated Trial Attorneys are hereby notified that to the extent that any such activity is a violation of this Court's previous orders to refrain from public comment regarding

5

these proceedings, and if the acts in violation are observed by the Hamilton County Sheriff or other officer of this Court, this Court will treat such act as a Direct Contempt subject to possible incarceration of those subject to the previous order of the Court. Designated Trial Attorneys are reminded of their responsibilities for their associates and clients subject to the Court's order.

{¶14} Despite the court's notices, Deters went forward with the protest on the front steps of the courthouse. It was organized in response to the judge's orders denying the plaintiffs' requests for group trials. Statman, Maraan and Feagan were not present at the protest.

{¶15} The judge was in Florida at the time of the scheduled protest. He asked Judge J. Howard Sundermann, who had tried several of the Durrani cases, to attend the gathering and to encourage Deters to avoid violating the order. Hamilton County Sheriff's Deputy Michael Dreyer accompanied Judge Sundermann to provide security. Before the event began, Deters spoke with Judge Sundermann and told him that Deters's plan was to criticize the management of the litigation against Durrani. Deters testified that Judge Sundermann told him that he was allowed to criticize the courts. We note that Judge Sundermann did not testify at the contempt hearing because he was not subpoenaed to appear at the hearing.

{¶16} Deters made comments at the protest that directly pertained to the Durrani litigation. A recording of the protest was posted on Deters's Facebook page. His Facebook page also encouraged news media to record his comments and report to the public about the Durrani litigation, and at least one news station reported some of his comments on the air and on the internet. Deters also posted reports of

jury verdicts in the Durrani cases, which the judge had previously order sealed, on his Facebook page.

{¶17} Following the protest, the judge entered show-cause orders to Deters, Feagan, Statman and Maraan, notifying them to appear to show cause why they should not be held in contempt. As to Statman, Maraan and Feagan, the orders stated, "It appearing that Alan Statman, Benjamin Maraan and Glenn Feagan have designated as a Trial Attorney for Plaintiffs in various Durrani cases and are associated with the Deters Law [f]irm and as designated Trial Attorneys are responsible for the sanctionable acts of their employees and associates * * *."

{¶18} At a hearing held on September 3, 2019, the judge found that Deters's conduct was intended to violate the court's orders and to "disrupt * * * efforts to provide fair and impartial justice to these parties." The judge also found that it was Deters's "intention to try to influence this jury pool." He found Deters in contempt and sentenced him to a minimum of 15 days, and ordered that he should remain there after the 15 days until all references to the Durrani litigation were removed from the internet. We affirmed the judge's decision in *In re Deters*, 1st Dist. Hamilton No. C-190516, 2020-Ohio-3518.

{¶19} Statman's, Maraan's and Feagan's contempt hearings were held the following day. They stipulated to the admission of the court's exhibits that had been admitted in Deters's hearing the day before.

{¶20} At his contempt hearing, Statman testified that he had a relationship with the Deters firm, not Deters, and that he dealt primarily with two other individuals at the Deters Law Firm. He said that he did not know about the protest until another attorney involved in the Durrani cases asked him if he had seen the judge's notices about the protest. He then sought out one of the notices and read it.

He acknowledged having a conversation with the judge about the protest during a pretrial conference a couple of days later, in which he jokingly said, "[T]ake me to jail today because there's nothing that I have to do with being able to deal with or control Mr. Deters."

**{¶21}** When asked how he understood his responsibility under the July 31, 2019 agreement, Statman stated,

> Well, I believed it was completely fulfilled because the order required me to bring to the attention of the Court a violation or actions that may be, in the future, a violation. And since I actually received the notice from the Court, and that's how I found out about it, I felt my obligation was fulfilled because the judge already knew what I would have told him and I actually had not seen * * * the order and actually knew what was going to happen.

> But nobody tells me. I'm not part of that process. I'm an independent firm. And I have that relationship for trying these cases. But I'm not aware of the day-to-day machinations of the Deters firm or Mr. Deters and his social media, etc.

**{¶22}** As to Deters social media posts, Statman stated,

> [S]everal months ago, I deleted—I never had a Facebook account. I had a Facebook account for a very short period of time. It was causing friction in my life that had nothing to do with Mr. Deters. And so I just deleted it because it wasn't important to me.

> And so my understanding is most of that is transmitted through social media, and I'm not a participant in social media, except for that very short period of time that I had a Facebook account.

8

He also testified that he had tried to be transparent about what he believed his role to be, and "that my loyalty isn't to the Deters firm or Eric Deters." While he had his contractual obligations, he was representing his clients. He added, "And I'm not an employee, nor do I have any control, and I think that Glenn [Feagan] would testify, if you put him on, that * * * he owns the firm and nobody is taking direction from me."

{¶23} At his hearing, Maraan testified that he viewed his obligations under the July 31, 2019 agreement the same as Statman, which was "if we were aware of any kind of contempt, we were supposed to report it." He did not know anything about the protest until he received the notice issued by the court. He stated,

> And I was saying that it's my understanding if we became aware of something that could be considered a violation of the 2018 order, I was supposed to bring it to the court's attention.
>
> However, the Court brought it to my attention. So I did not see there to be anything else that I needed to do further to make the Court aware as the July 31st order paragraph 3 said.

{¶24} As to the Facebook postings, Maraan testified,

> Actually I was blocked by Eric maybe two years ago. So he and I are not Facebook friends. So I don't participate in anything with Eric on Facebook.
>
> I might be unblocked from him now. I don't know.
>
> But I had no idea. I have never seen what was posted on Facebook regarding that hearing or regarding that protest. I don't * * * have any knowledge about what was talked about other than what I've heard more recently since these contempt motions were brought up.

**{¶25}** As to his relationship with Deters, Maraan stated, "I have no control over Eric Deters. Like I said, I'm a solo practitioner. I'm helping on the Durrani cases. I help Alan. I get help from the team, you know, we work together that way. But I have absolutely no control over Eric. And really, he has no control over me."

**{¶26}** The judge found Statman, Maraan, and Feagan to be in contempt and fined them each $250 and costs. The judgment entries stated that the judge found beyond a reasonable doubt that Statman and Maraan were "engaged with the Deters law firm" and were "associated with Eric Deters," and as designated trial attorneys, they were "responsible to this Court for any act of Eric Deters sanctionable in contempt." This appeal followed.

### *No Vicarious Liability for Contempt*

**{¶27}** Statman and Maraan present identical assignments of error for review. In their assignments of error, they contend that the trial court erred when it found them in contempt. They argue that there is no vicarious liability for a trial attorney regarding the alleged contemptuous conduct of a nonlawyer in an affiliated law firm. These assignments of error are well taken.

**{¶28}** R.C. 2705.02 provides that a person may be punished by contempt for "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer * * *." The Ohio Supreme Court has defined contempt of court as the disobedience of a court order. "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede, or obstruct the court in the performance of its functions." *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988); *Troja v. Pleatman*, 1st Dist. Hamilton No. C-150746, 2016-Ohio-5294, ¶ 10. The court's

authority to punish contempt is both inherent and statutory. *Denovchek* at 15; *Troja* at ¶ 10.

{**¶29**}  Though the judge once stated that the contempt was direct, the parties now concede that the cases involve indirect criminal contempt.  We agree*.  See Denovchek* at 16; *State v. Kilbane*, 61 Ohio St.2d 201, 204-205, 400 N.E.2d 386 (1980); *In re Deters*, 1st Dist. Hamilton No. C-190516, 2020-Ohio-3518, at ¶ 8-12. "[C]riminal contempt is a crime in every fundamental respect * * *."  *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 252, 416 N.E.2d 610 (1980), quoting *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).  Therefore, all of the elements of criminal content must be proven beyond a reasonable doubt. *Midland Steel Prod. Co. v. U.A.W., Local 486*, 61 Ohio St.3d 121, 127, 573 N.E.2d 98 (1991); *In re Thomas*, 1st Dist. Hamilton No. C-030429, 2004-Ohio-373, ¶ 5; *Rohr Corp. v. Wendt & Sons, Inc.*, 1st Dist. Hamilton No. C-961051, 1997 WL 770161, *3 (Dec. 12, 1997).

{**¶30**} At the beginning of the contempt hearing, the parties asked for clarification about the basis of the contempt allegation.  Statman's attorney stated,

[T]he way I understand your order to show cause, is that the issue for Mr. Statman is that he would be responsible for acts of Mr. Deters that are within the evidence that you've submitted because of his designation of trial attorney under Rule 10 of the local rules.

In other words, there's not an allegation, and I didn't find anything in any of those exhibits that there was some affirmative act that the Court maintains that Mr. Statman performed or did not perform that violated the Court's gag order.

11

**{¶31}** The judge stated, "That's correct," and agreed that the same was true for Feagan and Maraan.   Thus, the judge's finding of contempt was based solely on Deters's conduct and Statman's and Maraan's status as designated trial attorneys.

**{¶32}** The designations require the "Trial Attorney" to be responsible for "the conduct of all proceedings regarding the case unless someone else is subsequently designated." Even if the designations attempted to impose vicarious liability on the "Trial Attorney" for the actions taken by employees engaged in the litigation, Statman and Maraan cannot be vicariously liable for Deters's conduct.

**{¶33}** Under R.C. 2901.21(A), a crime consists of a voluntary act and the requisite mental state to commit that act.  *Maple Hts. v. Ephraim*, 178 Ohio App.3d 439, 2008-Ohio-4576, 898 N.E.2d 974, ¶ 37 (8th Dist.); *State v. Carusone*, 1st Dist. Hamilton No. C-010681, 2003-Ohio-1018, ¶ 44.  Vicarious liability "imputes the acts of one person to another."  *Maple Hts.* at ¶ 39.  It is a "departure from generally accepted principles of criminal culpability * * *."  *Id.* at 43.

**{¶34}** While vicarious liability for another's criminal conduct or failure to prevent another's criminal conduct can be created by statute, it cannot be created by the courts.  *State v. Tomaino*, 135 Ohio App.3d 309, 313, 733 N.E.2d 1191 (12th Dist.1999).  The contempt statute requires an affirmative act of disobedience of or resistance to a court order.

**{¶35}** This court has already decided Feagan's appeal.  In that case, we reversed the judge's decision finding Feagan in contempt.  *In re Feagan*, 1st Dist. Hamilton No. C-190544, 2020-Ohio-3788.  We relied on *N. Am. Coal Corp. v. Local Union 2262, United Mine Workers of Am.*, 497 F.2d 459 (6th Cir.1974), in which a union and eight of its officers were held in contempt by the trial court for violating an injunction against "continuing, encouraging, and picketing in support of a work

stoppage * * *." *Id.* at 461. The trial court entered the contempt finding even though the union officers had urged that work resume and had made "valiant efforts" to get the workers back to work. The trial court stated, "A Union is voluntary organization of members who seek a common goal. The officers of that Union must accept responsibility for the acts thereof. This Court is not willing to allow its orders to be defied." *Id.*

{¶36} The Sixth Circuit Court of Appeals reversed the trial court's contempt finding. It held that "there is simply no such thing as vicarious liability of an individual for contempt." *Id.* at 465. The court noted that the strike was never authorized by the union or any of its officers. "There is not a line of testimony that any one of those found guilty of criminal contempt ever did anything to initiate, encourage or continue the strike. The sworn testimony on the contrary was that they repeatedly sought to terminate it by conveying the orders of the court and by themselves ordering the miners back to work." *Id.*

{¶37} Based on that reasoning, we held that the evidence was insufficient to support the judge's finding that Feagan was in contempt. *In re Feagan*, 1st Dist. Hamilton No. C-190544, 2020-Ohio-3788, at ¶ 31. We stated that "there was no evidence that Feagan ratified Deters's conduct in violating the court order or that he did any affirmative act in violation of the court order that would have justified a finding of contempt." *Id.* at ¶ 30.

{¶38} The same reasoning applies in these cases, which present more compelling cases for reversal than *In re Feagan*. The record contains no evidence that Statman or Maraan initiated or encouraged Deters to violate the court's order. Further, the July 31, 2019 order only required them to report any violations of the judge's orders of which they had knowledge. As they testified at their contempt

hearings, the judge already knew about the planned protest. Feagan had supervisory authority over Deters, but Statman and Maraan had no control over Deters at all. *See id.* at ¶ 14.

**{¶39}** As with Feagan, the judge's contempt findings against Statman and Maraan rested solely on their duties to be responsible for the cases in which they were the designated trial attorneys. But there is no evidence that Statman or Maraan committed any affirmative act in violation of the court order that would have justified a finding of contempt.

**{¶40}** Consequently, we hold that the evidence was insufficient to support the judge's findings that Statman and Maraan were in contempt, and we, therefore, reverse the court's judgments. We sustain Statman's and Maraan's assignments of error and order them discharged.

Judgments reversed and appellants discharged.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:
The court has recorded its own entry this date.